******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* FRANK SCHOVANEC
## (SC 19851)

Rogers, C. J., and Palmer, Eveleigh, McDonald,
Espinosa, Robinson and D'Auria, Js.*

*Syllabus*

Convicted of, inter alia, the crimes of identity theft in the third degree, credit
card theft, illegal use of a credit card, and larceny in the sixth degree,
the defendant appealed. The victim, who had volunteered to help host
a party at her child's school, noticed shortly after returning home that
her wallet was missing from her purse. After searching unsuccessfully,
the victim discovered certain unauthorized purchases had been made
on one of her credit cards. These charges included two purchases at a
gas station near the school shortly after the party and various purchases
in a nearby city the following day, including a transaction at B Co. The
victim subsequently reported that, during the party, the defendant and
his wife had lingered around a table where the victim had placed her
unzipped purse. U and K, two employees from the gas station who
knew the defendant personally, testified at trial that the defendant had
purchased gasoline and cigarettes shortly after the party had ended. U
testified, in particular, that the defendant had requested a carton of
cigarettes and that such a request was unusual because the gas station
did not stock cartons. H, a police officer assigned to investigate the
victim's complaint, testified that, although a loss prevention officer
employed by B Co. had informed him of a video recording showing
three unidentified Hispanic males using the victim's credit card the day
after the party, H did not conduct any further investigation regarding
that purchase. At trial, the defendant requested an instruction on third-
party culpability and permission to make a corresponding argument to
the jury. The trial court declined to issue that instruction and excluded
references to third-party culpability from argument, but permitted
defense counsel to refer to H's testimony regarding the video recording
and the three unidentified Hispanic males. Following his conviction, the
defendant appealed, claiming that the trial court had incorrectly denied
his request for a third-party culpability instruction and argument and
that, because the charge of larceny in the sixth degree arose out of the
same acts as the charges of identity theft in the third degree and illegal
use of a credit card, his convictions on these charges violated the consti-
tutional prohibition against double jeopardy. *Held*:

1. The trial court did not abuse its discretion in declining to charge the jury
   on, or permit arguments regarding, the issue of third-party culpability:
   in the absence of evidence that the three unidentified Hispanic males
   were involved in the theft of the victim's wallet or the unauthorized
   purchases at the gas station, the defendant had failed to establish a
   direct connection between those individuals and the charged offenses;
   moreover, in the absence of such a direct connection, the fact that
   the trial court exercised its discretion in allowing defense counsel to
   reference H's testimony regarding the video recording did not require
   the conclusion that the evidence reasonably supported argument or a
   charge on the issue of third-party culpability.

2. The defendant could not prevail on his unpreserved claim that his convic-
   tions of identity theft in the third degree, illegal use of a credit card,
   and larceny in the sixth degree violated the constitutional prohibition
   against double jeopardy, the defendant having failed to establish that
   the charged offenses arose out of the same act or transaction; in light
   of the theft of the victim's wallet, the various items contained therein,
   gasoline, and cigarettes, the jury reasonably could have found a separate
   factual basis for each offense.

Argued April 4—officially released July 18, 2017

*Procedural History*

Substitute, two part information charging the defen-
dant, in the first part, with the crimes of identity theft

in the third degree, credit card theft, illegal use of a credit card, and larceny in the sixth degree and, in the second part, with being a persistent larceny offender, brought to the Superior Court in the judicial district of Danbury, geographical area number three, where the first part of the information was tried to the jury before *Hon. William J. Lavery*, judge trial referee; verdict of guilty; thereafter, the defendant was presented to the court on a plea of guilty, with respect to the second part of the information; judgment in accordance with the verdict and plea, from which the defendant appealed. *Affirmed.*

*David V. DeRosa*, for the appellant (defendant).

*Marcia A. Pillsbury*, assistant state's attorney, with whom, on the brief, were *Stephen J. Sedensky III*, state's attorney, and *Sharmese L. Hodge*, assistant state's attorney, for the appellee (state).

*Opinion*

EVELEIGH, J. The defendant, Frank Schovanec, appeals from the judgment of conviction, rendered following a jury trial, of identity theft in the third degree in violation of General Statutes § 53a-129d, credit card theft in violation of General Statutes § 53a-128c (a), illegal use of a credit card in violation of General Statutes § 53a-128d (2), and larceny in the sixth degree in violation of General Statutes § 53a-125b.[1] On appeal, the defendant claims that the trial court incorrectly (1) precluded him from arguing third-party culpability and denied his corresponding request for a jury instruction, and (2) sentenced the defendant on the charges of identity theft, illegal use of a credit card, and the lesser included offense of larceny in the sixth degree because these convictions violated the prohibition against double jeopardy contained within the fifth amendment to the United States Constitution.[2] We disagree and, accordingly, affirm the judgment of the trial court.

The following facts, which the jury reasonably could have found, are relevant to this appeal. On October 31, 2013, the victim was the room parent for her child's class at Middle Gate Elementary School (school) in the town of Newtown.[3] That morning, she put her child on the bus and went to work in the city of New Haven, where she worked as an accountant. The victim unlocked the door to her office and worked there until 2:30 p.m. There were no other security measures, such as key cards or badges, required for entrance to her office. After the victim left work, she traveled to the school in order to attend a Halloween party for her child's class. The victim brought bags of supplies for the party and, due to traffic, was running a few minutes late. She entered the classroom, placed her unzipped purse on a table located to the right of the door, and immediately began helping with the children and the party.

The defendant and his wife, Lori Schovanec, were also at the Halloween party because they had a child in the same classroom. The victim saw the defendant and his wife in the classroom, but was not formally introduced to them. Prior to the party, the victim had never seen the defendant and his wife. At the end of the party, the victim noticed that the defendant and his wife were lingering around the table by the door where she had placed her purse.

Later that evening, as the victim and her husband were leaving to take their children out trick or treating, the victim discovered that her wallet was not in her purse. She contacted a manager at her place of employment to see if the wallet was either in her office or an adjacent parking lot. The manager did not find the wallet. When she arrived back home after trick or treating, the victim searched her house for the wallet, but did

not find it. The victim then checked her accounts online and discovered that someone was making charges on a credit card that had been in her wallet. She called the bank, cancelled the card, and informed the bank that someone was using the card without her permission. The victim then called and cancelled all of the other bank and credit cards that she had in her wallet. The victim's driver's license, a heath savings account credit card, and insurance cards were also in her wallet at the time. The driver's license contained the victim's name and address.

The victim last remembered having her wallet when she used a credit card at a restaurant in the town of Bethel on October 30, 2013, the night before the Halloween party. She checked at the restaurant, but her wallet was not there.

The victim then reported her wallet stolen to the Newtown Police Department. Because the victim believed that she had either lost her wallet or that it had been stolen at the restaurant, the Newtown Police Department instructed the victim to contact the Bethel Police Department. The victim then shared documents with the Bethel Police Department showing that the first unauthorized use of her credit cards had taken place at a gas station on South Main Street in Newtown. All of the subsequent unauthorized charges took place at locations in the city of Waterbury.

The victim was familiar with that particular gas station because it is located near the school. The victim subsequently went to the gas station and spoke to the owner. She requested, and obtained, a copy of the receipt for the transactions in which her credit card had been used. The receipts indicated that her credit card was used on October 31, 2013, at 3:39 p.m. Upon seeing that the time on the receipt was minutes after school had been released that day, the victim began to think that her wallet must have been taken when she was at the school. Thereafter, the victim reported the theft of her wallet and the unauthorized use of her credit card to the Newtown Police Department because the first unauthorized use of the card had been at the gas station in Newtown.

Robert Haas, a police officer employed at the Newtown Police Department, investigated the victim's complaint regarding the theft of her wallet and the unauthorized use of her credit card. At trial, Haas testified that the gas station is located a short distance from the school, and that it would take about two minutes to drive from the school to the gas station. He obtained the original receipt for an unauthorized charge of $76 from the owner of the gas station. He confirmed that the time on the receipt was 3:39 p.m. He obtained the school's visitor log for October 31 and confirmed that the defendant and his wife were listed as being at the school that day. The evidence contained within the

record shows that many parents were listed on the visitor log for that day because of the multiple Halloween parties at the school.

Haas interviewed two employees of the gas station who were working on October 31, Kenneth Urban and Hakan Kundraci. At trial, Urban testified that he knew the defendant because the defendant used to work at the gas station. Urban further testified that had seen the defendant pull into the gas station in the late afternoon of October 31, 2013, and that the defendant had swiped a credit card at the pump to pay for gasoline. Urban testified that the defendant and a female companion entered the store and asked for a carton of cigarettes, which was unusual because the defendant usually only bought one or two packs at a time. Urban then asked Kundraci to assist the defendant because he was helping a customer outside. According to Urban's testimony, because cartons of cigarettes were not typically stocked at the store, customers could only purchase individual packs.

Kundraci had worked at the gas station for about ten years. He gave a statement to police about the incident that occurred at the gas station on October 31, involving the defendant. Kundraci testified that that the defendant purchased packs of cigarettes, but that he could not recall how many packs. After reviewing his statement to police, Kundraci testified that the defendant had purchased eight packs of cigarettes. Kundraci testified that the defendant and the woman were in a green minivan. Kundraci also testified that the defendant would sometimes pay with cash, sometimes with a credit card, and sometimes with a store charge, meaning he was permitted to pay the gas station back later.

There were other charges made on the victim's credit cards in Waterbury. Officer Haas, however, did not investigate these transactions. Those charges amounted to approximately $800. Haas testified that, because those transactions involved the same card, he contacted the loss prevention department in one of the stores where the card had been used, the Burlington Coat Factory at the Waterbury Mall. The loss prevention officer told Haas that the videotape from the store's security camera system showed that the victim's credit card was used by three Hispanic males on November 1, 2013. There was no investigation by the Waterbury Police Department into the charges on the victim's credit card. Haas did not view the videotape himself. The loss prevention officer did not testify at the trial. Neither party attempted to enter the videotape into evidence.

The defendant requested that the court include a jury instruction as to third-party culpability and that he be allowed to argue third-party culpability. The state objected to these requests. The court declined to give the requested charge. The court also excluded any reference to third-party culpability during argument. The

court, however, indicated that counsel could "make remarks about anything that's in testimony," including Haas' testimony regarding his conversation with the loss prevention officer about the three unidentified Hispanic males that had used the victim's credit card in Waterbury.

The jury returned a verdict of guilty on the charges of identity theft in the third degree in violation of § 53a-129d, credit card theft in violation of § 53a-128c (a), illegal use of a credit card in violation of § 53a-128d (2), and larceny in the sixth degree in violation of § 53a-125b.[4] The court subsequently rendered a judgment of conviction in accordance with the jury's verdict, from which the defendant appealed.[5] Additional facts will be set forth as necessary.

I

The defendant first claims that the trial court incorrectly precluded him from arguing third-party culpability and refusing to charge on that issue. Specifically, he asserts that, at trial, defense counsel demonstrated a direct connection between a third party and the crimes for which the defendant was convicted. We disagree.

The following additional facts are necessary for the resolution of the defendant's claim. During closing argument, defense counsel asserted that there had been a misidentification of the defendant. Specifically, defense counsel asserted that the defendant did not commit the crime and that the three Hispanic men who were in the videotape from the Burlington Coat Factory had committed the crime.

The defendant filed a formal request to charge. The fifth requested charge contained the following lanugage: "There has been evidence that . . . third parties . . . not the defendant, committed the crimes with which the defendant is charged. This evidence is not intended to prove the guilt of the third parties, but is part of the total evidence for you to consider. The burden remains on the state to prove each and every element of the offense beyond a reasonable doubt. It is up to you, and to you alone, to determine whether any of this evidence, if believed, tends to directly connect third parties to the crimes with which the defendant is charged. If after a full and fair consideration and comparison of all the evidence, you have left in your minds a reasonable doubt indicating that the alleged third parties, in this case, three unidentified Hispanic males, may be responsible for the crimes the defendant is charged with committing, then it would be your duty to render a verdict of not guilty as to the [defendant]." The prosecutor objected to the proposed third-party culpability instruction on the ground that there was no evidence presented regarding any third-party culpability. The court then denied the defendant's requested third-party culpability instruction.

We begin with the standard of review applicable to the defendant's claim that the trial court incorrectly refused to charge on third-party culpability. "In determining whether the trial court improperly refused a request to charge, [w]e . . . review the evidence presented at trial in the light most favorable to supporting the . . . proposed charge. . . . A request to charge which is relevant to the issues of [a] case and which is an accurate statement of the law must be given. . . . If, however, the evidence would not reasonably support a finding of the particular issue, the trial court has a duty not to submit it to the jury. . . . Thus, a trial court should instruct the jury in accordance with a party's request to charge [only] if the proposed instructions are reasonably supported by the evidence." (Internal quotation marks omitted.) *State* v. *Arroyo*, 284 Conn. 597, 607–608, 935 A.2d 975 (2007). "[T]he very standards governing the admissibility of [third-party] culpability evidence also should serve as the standards governing a trial court's decision of whether to submit a requested [third-party] culpability charge to the jury." Id., 608–609.

"The admissibility of evidence of [third-party] culpability is governed by the rules relating to relevancy. . . . Relevant evidence is evidence having any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence. . . . Accordingly, in explaining the requirement that the proffered evidence establish a direct connection to a third party, rather than raise merely a bare suspicion regarding a third party, we have stated [that such] evidence is relevant, exculpatory evidence, rather than merely tenuous evidence of [third-party] culpability [introduced by a defendant] in an attempt to divert from himself the evidence of guilt. . . . In other words, evidence that establishes a direct connection between a third party and the charged offense is relevant to the central question before the jury, namely, whether a reasonable doubt exists as to whether the defendant committed the offense. Evidence that would raise only a bare suspicion that a third party, rather than the defendant, committed the charged offense would not be relevant to the jury's determination. A trial court's decision, therefore, that [third-party] culpability evidence proffered by the defendant is admissible, necessarily entails a determination that the proffered evidence is relevant to the jury's determination of whether a reasonable doubt exists as to the defendant's guilt. . . . Finally, [t]he trial court's ruling on the relevancy of [third-party] inculpatory evidence will be reversed on appeal only if the court has abused its discretion or an injustice appears to have been done. . . .

"Whether a defendant has sufficiently established a direct connection between a third party and the crime with which the defendant has been charged is necessar-

ily a fact intensive inquiry. In other cases, this court has found that proof of a third party's physical presence at a crime scene, combined with evidence indicating that the third party would have had the opportunity to commit the crime with which the defendant has been charged, can be a sufficiently direct connection for purposes of [third-party] culpability. . . . Similarly, this court has found the direct connection threshold satisfied for purposes of [third-party] culpability when physical evidence links a third party to a crime scene and there is a lack of similar physical evidence linking the charged defendant to the scene. . . . Finally, this court has found that statements by a victim that implicate the purported third party, combined with a lack of physical evidence linking the defendant to the crime with which he or she has been charged, can sufficiently establish a direct connection for [third-party] culpability purposes." (Citations omitted; internal quotation marks omitted.) *State* v. *Baltas*, 311 Conn. 786, 810–12, 91 A.3d 384 (2014).

A trial court is in the best position to view the evidence in the context of the entire case and has wide discretion in making its evidentiary rulings. *State* v. *Walsh*, 67 Conn. App. 776, 790, 789 A.2d 1031, cert. denied, 269 Conn. 906, 795 A.2d 546 (2002). A trial court's decision as to the relevancy of third-party culpability evidence will be reversed on appeal only if it has abused its discretion or an injustice appears to have been done. *State* v. *West*, 274 Conn. 605, 626, 877 A.2d 787, cert. denied, 546 U.S. 1049, 126 S. Ct. 775, 163 L. Ed. 2d 601 (2005). "Whether a defendant has sufficiently established a direct connection between a third party and the crime with which the defendant has been charged is necessarily a fact intensive inquiry." *State* v. *Baltas*, supra, 311 Conn. 811.

The defendant asserts that, because there was evidence adduced at trial that purchases using the victim's credit card took place in Waterbury by individuals who did not match his description, he had established a direct connection between a third party and the crime for which he was charged. The defendant further claims that, because the trial court allowed defense counsel to comment on the use of the credit card in Waterbury by individuals other than the defendant, the trial court should have provided corresponding instructions to the jury as guidance. We are not persuaded.

The defendant failed to establish a direct connection between the charged offenses, which occurred on October 31, 2013, in Newtown, and the use of the victim's stolen credit card in Waterbury the following day. There was no evidence that the three unidentified Hispanic males were involved in the theft of the victim's wallet or the unauthorized use of her credit card in Newtown. Even if the evidence adduced at trial showed conclusively that the stolen credit card had been used by three

unidentified Hispanic males in Waterbury, there was no evidence directly connecting these individuals to the crimes with which the defendant was charged, which were committed on the previous day in Newtown. Eyewitnesses who knew the defendant personally identified him as using a credit card for two purchases at the gas station in Newtown. Those transactions, which appeared on the victim's credit card account, were made minutes after the school Halloween party that both the victim and the defendant attended and the gas station was a two minute drive from the school. The statements attributed to the Burlington Coat Factory loss prevention officer do not even raise a bare suspicion that the stolen credit card was used by anyone other than the defendant at the gas station in Newtown. There is no evidence that the three unidentified Hispanic males ever used the victim's credit card to charge anything at the gas station. Indeed, there was no evidence those individuals were ever at the gas station. What may have happened to the card after the defendant used it at the gas station is, at most, the subject of sheer speculation. There is clearly not a direct connection.

The defendant relies on *State* v. *Hedge*, 297 Conn. 621, 1 A.3d 1051 (2010), in support of his claim that he had established a direct connection between the third party and the crimes for which he was charged. In *Hedge*, we reversed in part the judgment of the trial court, which had precluded certain third-party culpability evidence from being admitted. Id., 629–30. Specifically, in *Hedge*, the defendant sought to introduce evidence that, shortly before his arrest, he had borrowed a vehicle in which drugs were subsequently found and that the same vehicle had been driven by a convicted drug dealer less than twenty-four hours earlier. Id., 629. In *Hedge*, this court concluded that the third-party culpability evidence should have been admitted, reasoning as follows: "[The defendant] claimed that he did not know anything about the drugs that were found secreted in the vehicle and proffered evidence that a convicted drug dealer, who previously had left drugs and money in the vehicle, had driven the vehicle shortly before him. That evidence was highly relevant to the defendant's theory of defense. We conclude, therefore, that when . . . a person is arrested for the possession of drugs that are concealed in a vehicle that does not belong to him, and he adduces evidence that another person had both the motive and the opportunity to commit the crime and actually operated the vehicle within a twenty-four hour period, it is improper for the trial court to exclude that evidence." Id., 646.

In the present case, there is neither evidence of the presence of a third party at the school or the gas station, nor evidence of the opportunity for a third party to have committed the crime at either location. Because the defendant did not establish even a minimal direct

connection between the charged crimes and the alleged use of the stolen credit card in Waterbury the following day, we conclude that the trial court did not abuse its discretion in denying the defendant's request to charge on third-party culpability or the defendant's request to make corresponding arguments.

The trial court ruled that defense counsel could make remarks about anything that was "in testimony." Therefore, during his closing argument defense counsel commented on the fact that the victim's credit cards were used on November 1, 2013, in Waterbury and that the investigating officer failed to follow up on the information. The defendant claims that, because counsel was allowed to comment on the use of the charge card in Waterbury, it was clearly relevant. If the testimony was relevant, he contends, it merited a charge to the jury and further arguments from defense counsel that a third party was responsible for the credit card charges at the gas station in Newtown. The fact that the trial court exercised its discretion in allowing counsel to comment on the use of the credit cards in Waterbury, a ruling which clearly benefited the defendant, however, does not mean that the evidence reasonably supported either further argument or a charge on the issue of third-party culpability. The sufficiency of the proof, in the context of the present case, is measured in terms of the evidence related to both the theft of the wallet at the school and the charges at the gas station in Newtown. The proof of any third-party direct connection relation to those two events was nonexistent. Therefore, we conclude that the trial court did not abuse its discretion in refusing to charge the jury on, or permit arguments regarding, the issue of third-party culpability.

II

The defendant next claims that his convictions of identity theft, illegal use of a credit card and the lesser included offense of larceny in the sixth degree violated the constitutional prohibition against double jeopardy. We conclude that, under *Blockburger* v. *United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932), and in the context of the charging document in the present case, the defendant is unable to establish that larceny in the sixth degree is the same offense, for purposes of double jeopardy, as either identity theft in the third degree or illegal use of a credit card.[6] Accordingly, we conclude that the trial court correctly sentenced the defendant for his convictions of identity theft, illegal use of a credit card and the lesser included offense of larceny in the sixth degree.

The defendant failed to preserve his double jeopardy claims at trial and seeks to prevail on appeal pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). Under *Golding*, a defendant may prevail on an unpreserved claim only if the following conditions are met: "(1) the record is adequate to review the alleged

claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Footnote omitted.) Id.; see *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015) (modifying third prong of *Golding*). Because the record is adequate for review, and the defendant's claim that the multiple convictions violated his right against being placed in double jeopardy is of constitutional magnitude, our inquiry focuses on whether the violation alleged by the defendant exists and deprived him of a fair trial.

"A defendant's double jeopardy challenge presents a question of law over which we have plenary review. . . . The double jeopardy clause of the fifth amendment to the United States constitution provides: [N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb. The double jeopardy clause is applicable to the states through the due process clause of the fourteenth amendment. . . . This constitutional guarantee prohibits not only multiple trials for the same offense, but also multiple punishments for the same offense in a single trial. . . .

"Double jeopardy analysis in the context of a single trial is a two-step process. First, the charges must arise out of the same act or transaction. Second, it must be determined whether the charged crimes are the same offense. Multiple punishments are forbidden only if both conditions are met. . . .

"Traditionally we have applied the *Blockburger* test to determine whether two statutes criminalize the same offense, thus placing a defendant prosecuted under both statutes in double jeopardy: [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. . . . This test is a technical one and examines only the statutes, charging instruments, and bill of particulars as opposed to the evidence presented at trial. . . .

"Our analysis of [the defendant's] double jeopardy [claim] does not end, however, with a comparison of the offenses. The *Blockburger* test is a rule of statutory construction, and because it serves as a means of discerning [legislative] purpose the rule should not be controlling where, for example, there is a clear indication of contrary legislative intent. . . . Thus, the *Blockburger* test creates only a rebuttable presumption of legislative intent, [and] the test is not controlling when a contrary intent is manifest. . . . When the conclusion reached under *Blockburger* is that the two

crimes do not constitute the same offense, the burden remains on the defendant to demonstrate a clear legislative intent to the contrary." (Citations omitted; internal quotation marks omitted.) *State* v. *Wright*, 319 Conn. 684, 689–90, 127 A.3d 147 (2015).

In count one of its long form information dated June 17, 2015, the state accused the defendant of identity theft in the third degree and charged that, on October 31, 2013, in Newtown, the defendant "knowingly used personal identifying information of another person to obtain goods without the consent of such other person, in violation of . . . § 53a-129d."

In count three of the same information, the state accused the defendant of illegal use of a credit card and charged that, on October 31, 2013, in Newtown, the defendant "obtained goods and anything of value by representing without the consent of the cardholder that he [was] the holder of a specified card, in violation of . . . § 53a-128d (2)."

In count four of the same information, the state accused the defendant of larceny in the sixth degree and charged that, on October 31, 2013, in Newtown, the defendant, "with intent to deprive another of property and to appropriate the same [to] himself or a third party . . . wrongfully [took], obtain[ed], [and withheld] such property from an owner and the value of the property is [$500] or less, in violation of . . . § 53a-125b."

As indicated previously, the *Blockburger* test involves a two step analysis. *State* v. *Wright*, supra, 319 Conn. 689. First, we must determine if the charges arose out of the same transaction. Id. If that fact is established we then look to whether the charges cover one offense. Id. In conducting the second inquiry, we only look to the statutes, charging documents, and any bill of particulars, not evidence at trial. Id., 690. When conducting the first inquiry, however, it is not uncommon that we look to the evidence at trial and to the state's theory of the case. For example, in *State* v. *Snook*, 210 Conn. 244, 265, 555 A.2d 390, cert. denied, 492 U.S. 924, 109 S. Ct. 3258, 106 L. Ed. 2d 603 (1989), this court explained as follows: "The defendant does not even address the first issue whether the second and third degree sexual assault charges arose out of the same transaction. [T]he state introduced evidence of a number of episodes in which the defendant engaged in sexual intercourse with the victim. Both counts . . . alleged that the defendant committed the prohibited act or acts on 'diverse days between June, 1979, and January, 1984.' The state points out that the jury could have relied on evidence of one act to convict the defendant of [one crime], and evidence of a different act to convict him of [the other]. Thus, the defendant has failed to meet his initial burden of demonstrating that his conviction on the second and third degree sexual assault charges arose out of the same

act." Thus, in *Snook*, we analyzed the first step using both the charging document and the evidence upon which the jury could have relied.[7] Accordingly, if we conclude that the charges may not have occurred from the same transaction, it is unnecessary for us to proceed to step two of the analysis.

With respect to the charge of larceny in the sixth degree in count four of the long form information, in his closing argument, the prosecutor asserted the following: "[I]ntent to deprive another person of property or to appropriate the . . . same to himself or a third party who wrongfully takes, obtains or withholds such property from the owner. Okay. What does that mean? Intent to deprive another of property . . . what property was [the victim] deprived of? She's deprived of her wallet. She's deprived of her credit cards. She's deprived of her driver's license . . . . Her personal property, her personal belongings . . . included that wallet and everything inside . . . that was taken from her. And so whether it was taken from her directly by [the defendant] or he obtained it or withheld that property from her, that's a larceny, and when we talk about different degrees of larceny, we're talking about what is the value of that property . . . . [T]he value of the property [here] is $500 or less . . . . That could be the credit card, it could be [the gasoline] . . . the cigarettes . . . [or] the value of the wallet itself. . . . That's larceny in the [sixth] degree." The defendant claims that, because the judge referred to the gasoline and cigarettes in the charge, it was all part of the same transaction. However, because the jury, and not the judge, was the fact finder in the present case, because the information was broad enough to encompass the theft of the wallet and its contents and the separate unauthorized charges on the credit cards, and because the prosecutor both argued the case and presented evidence in that manner relating to both incidents, we reject the defendant's arguments in that regard.

On the basis of the testimony of the witnesses and the evidence introduced at trial, the jury reasonably could have found a factual basis for the charge of larceny in the sixth degree arose out of the theft of the victim's wallet and all of the items contained therein, including her driver's license, her insurance cards, and her bank and credit cards, as well as the separate theft of the gasoline and the cigarettes from the gas station. Any of those separate actions could have formed the basis for finding the defendant guilty of larceny in the sixth degree.

Similarly, the jury reasonably could have found a factual basis for the charges of identity theft and illegal use of a credit card arose out of the specific use of one particular credit card in the stolen wallet. Thus, there was a separate factual basis for the charge of larceny in the sixth degree that did not arise out of the same

act as the charges of identity theft in the third degree and illegal use of a credit card. We therefore conclude that the defendant has failed to establish the first prong of *Blockburger* and, therefore, we need not proceed to the second prong. See *State* v. *Wright*, supra, 319 Conn. 689. Accordingly, we conclude that the defendant has failed to establish that his convictions of identity theft, illegal use of a credit card and the lesser included offense of larceny in the sixth degree violated the constitutional prohibition against double jeopardy.

The judgment is affirmed.

In this opinion the other justices concurred.

* This case originally was scheduled to be argued before a panel of this court consisting of Chief Justice Rogers, and Justices Palmer, Eveleigh, McDonald, Espinosa, Robinson and D'Auria. Although Justice Espinosa was not present when the case was argued before the court, she has read the briefs and appendices, and listened to a recording of oral argument prior to participating in this decision.

[1] We note that the defendant was also convicted of being a persistent larceny offender in violation of General Statutes (Rev. to 2013) § 53a-40. See also footnote 6 of this opinion.

[2] "The double jeopardy clause of the fifth amendment to the United States constitution provides: [N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb . . . . This constitutional provision is applicable to the states through the due process clause of the fourteenth amendment." (Internal quotation marks omitted.) *State* v. *Padua*, 273 Conn. 138, 172 n.39, 869 A.2d 192 (2005).

[3] At trial, the victim described her duties as a room parent as follows: "A room parent, basically, just helps the teacher out with anything she needs as far as parent volunteers in the classroom . . . they're at the holiday parties . . . or any other events that maybe the teacher might need help with . . . ."

[4] We note that, following trial, the defendant pleaded guilty to a separate charge of being a persistent larceny offender in violation of General Statutes (Rev. to 2013) § 53a-40. See also footnote 6 of this opinion.

[5] The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[6] The defendant also asserts that, because the conviction for larceny in the sixth degree was the basis for his enhanced sentence as a persistent larceny offender and his conviction for larceny in the sixth degree violates the prohibition against double jeopardy, there is no basis for his plea as a persistent larceny offender and it must be vacated. Because we conclude that the defendant's conviction for larceny in the sixth degree does not violate the prohibition against double jeopardy, we need not address this claim.

[7] We note that the defendant in the present case did not request a bill of particulars regarding count four, which contained the charge of larceny in the sixth degree. Thus, the jury could have found separate acts of larceny that occurred on the same day. Furthermore, if the defendant had raised his claim before the trial court that a conviction of identity theft, illegal use of a credit card and the lesser included offense of larceny in the sixth degree would violate the constitutional prohibition against double jeopardy, the state or the court could have made clear that theft of the same property could not form the factual basis for the larceny charge and the other charges. By failing to raise the claim of double jeopardy before the trial court, the defendant contributed to the ambiguity that is now present in the record.