******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# STATE OF CONNECTICUT *v.* JERRELL R.*
## (AC 40155)

DiPentima, C. J., and Lavine and Harper, Js.

*Syllabus*

Convicted of the crime of unlawful restraint in the second degree, and of two counts of the crime of risk of injury to a child in violation of statute (§ 53-21 [a] [1] and [2]), the defendant appealed to this court. The defendant's conviction stemmed from an incident involving the minor victim, who was his daughter. On appeal, the defendant claimed that his conviction of two counts of risk of injury to a child violated the double jeopardy clause and that he was denied a fair trial due to certain instances of prosecutorial impropriety that occurred during closing and rebuttal arguments. *Held*:

1. The defendant could not prevail on his unpreserved claim that his conviction under subdivisions (1) and (2) of § 53-21 (a) violated the constitutional prohibition against double jeopardy, as he failed to establish that the charged offenses arose out of the same act or transaction: the evidence, charging documents, and the state's theory of the case reflected that the defendant's conduct was separable into distinct parts, each punishable as a separate offense, as the jury reasonably could have credited the testimony of the victim and her mother that the defendant waited until the victim's mother was in the shower, and then pulled down the victim's pants, pinned her against the wall and forced her head toward his exposed penis while instructing her to suck it, which supported the defendant's conviction of risk of injury to a child under § 53-21 (a) (1), and the jury reasonably could have credited the victim's statements in her forensic interview that the defendant touched her vagina while also discrediting the defendant's testimony that the touching was accidental, which supported his conviction of risk of injury to a child under § 53-21 (a) (2); moreover, the defendant's reliance on certain case law in support of his claim that this court must conclude that the crimes arose out of the same transaction because it was unclear what conduct the jury relied on to convict him was misplaced, as the case law relied on by the defendant was distinguishable from the present case in that the reviewing court looked only to the charging documents and did not consider, as instructed by more recent case law, the evidence presented at trial or the state's theory of the case to discern what the jury reasonably could have found to support the conviction.

2. The defendant's claim that he was deprived of a fair trial as a result of certain instances of prosecutorial impropriety during closing and rebuttal arguments was unavailing:

   a. The prosecutor did not misstate the law with respect to subdivision (2) of § 53-21 (a) during closing argument by referring to evidence relating to the risk of injury charge under § 53-21 (a) (1); the prosecutor aptly explained the difference between the two charges and correctly stated that the sexual contact itself must impair the health or morals of a child to support a conviction under § 53-21 (a) (2), the prosecutor was not required in presenting closing argument to neatly arrange the evidence introduced at trial according to the charge it supported, and the defendant failed to object to the remarks, which suggested that he did not view them as improper at the time they were made.

   b. The prosecutor did not, during rebuttal argument, improperly offer her personal opinion regarding the credibility of the victim's sister, who had testified to the defendant's prior acts of sexual misconduct committed on her while she was sleeping; the prosecutor's challenged remark was based on the evidence presented at trial and was a proper request for the jurors to use their common sense to draw reasonable inferences from the evidence to support the theory that the defendant intentionally touched the victim's intimate parts in a similarly sexual manner, the prosecutor's use of the phrase "in my opinion" in this context did not raise the concern of improper unsworn testimony, and the defendant did not object to the remarks at the time they were made.

Argued October 9, 2018–officially released January 29, 2019

Substitute information charging the defendant with the crimes of sexual assault in the first degree and unlawful restraint in the second degree, and with two counts of the crime of risk of injury to a child, brought to the Superior Court in the judicial district of Fairfield and tried to the jury before *Pavia, J.*; verdict and judgment of guilty of unlawful restraint in the second degree and risk of injury to a child, from which the defendant appealed to this court. *Affirmed.*

*Matthew C. Eagan*, assigned counsel, with whom was *Emily Graner Sexton*, assigned counsel, for the appellant (defendant).

*Brett R. Aiello*, special deputy assistant state's attorney, with whom, on the brief, were *John C. Smriga*, state's attorney, and *Colleen P. Zingaro*, assistant state's attorney, for the appellee (state).

*Opinion*

HARPER, J. The defendant, Jerrell R., appeals from the judgment of conviction, rendered following a jury trial, of risk of injury to a child in violation of General Statutes § 53-21 (a) (1), risk of injury to a child in violation of § 53-21 (a) (2), and unlawful restraint in the second degree in violation of General Statutes § 53a-96 (a). On appeal, the defendant claims that (1) his conviction of both risk of injury to a child charges violate his constitutional protection against double jeopardy and (2) the prosecutor made improper remarks to the jury during closing and rebuttal arguments that deprived him of his due process right to a fair trial. We affirm the judgment of the trial court.

The following facts, which the jury reasonably could have found, and procedural history are relevant to this appeal. The victim, the victim's mother, and the victim's two siblings lived on the first floor of a six family home. The defendant was the father of both the victim, who was six years old, and the victim's sister. On the evening of March 7, 2015, the defendant sent text messages to the victim's mother, asking if he could come to her home. The victim's mother acquiesced, and the defendant arrived twenty minutes later. After watching television and conversing with the defendant and the victim in the bedroom of the victim's mother, the victim's mother left the room to shower.

After approximately eight minutes, the victim's mother heard the victim screaming. At first, the victim's mother did not think anything of the screaming because she believed that the defendant and victim were just playing. After realizing that the victim was calling for help, the victim's mother ran out of the bathroom and toward her bedroom, where the door was partially shut. Upon opening the door, the victim's mother witnessed the defendant holding the victim by the face and pinning her against the wall while her pants were halfway down. After the victim's mother returned to the bedroom, the defendant went into the kitchen, got on his knees, and started crying and pulling on his hair. At that point, the defendant left the home after the victim's mother told him to leave. The victim later revealed in a forensic interview that while her mother was in the shower, the defendant had removed her pants, touched her vagina, and forced her head toward his exposed penis.

After the defendant left the home, the victim described her encounter with the defendant to her mother, who then tried to reach the defendant via phone in an attempt to have him come back to the house. After he stopped answering text messages, the victim's mother contacted the police, who subsequently interviewed the victim at her home. The victim's mother again urged the defendant to come back to the house, but he refused once he came close to the home and

noticed police cars parked outside. The victim subsequently was transported to the hospital, accompanied by her mother and the responding police officers. In an attempt to get the defendant to come to the hospital, the victim's mother sent a text message to the defendant saying that the victim had suffered an asthma attack and was going to the hospital.

The defendant later arrived at the hospital, where he spoke with police officers after waiving his *Miranda*[1] rights. During questioning, the defendant claimed to be concerned that other men were touching his daughter inappropriately, and he admitted that he might have touched the victim's vagina. Additionally, the defendant later conceded in an interview with a social worker from the Department of Children and Families that he restrained the victim and may have touched her vagina by accident.

The state originally filed a seven count information after the victim's two siblings also alleged that the defendant had inappropriate sexual contact with them. After one of the victim's siblings declined to testify at trial, the state filed an amended information, charging the defendant with sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2), risk of injury to a child in violation of § 53-21 (a) (1), risk of injury to a child in violation of § 53-21 (a) (2), and unlawful restraint in the second degree in violation of § 53a-96 (a). All of these charges related to the incident with the victim.

At trial, the jury found the defendant not guilty of sexual assault in the first degree and guilty of unlawful restraint and both counts of risk of injury to a child. The court subsequently sentenced the defendant to a total effective sentence of eighteen years imprisonment, execution suspended after eight years, followed by twenty-five years of probation. This appeal followed. Additional facts will be set forth as necessary.

I

First, the defendant claims that his conviction of risk of injury to a child under both § 53-21 (a) (1)[2] and (2)[3] violates his constitutional protection against double jeopardy because the offenses arose from the same transaction and, pursuant to *Blockberger* v. *United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932), both offenses required proof of substantively identical elements. We disagree.

As a preliminary matter, the defendant acknowledges that he failed to raise the present claim before the trial court. The defendant argues, however, that his unpreserved claim nonetheless is reviewable pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015). Under *Golding*, "a defendant can prevail on a claim of constitutional error not pre-

served at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original; footnote omitted.) *State* v. *Golding*, supra, 239–40. "The first two steps in the *Golding* analysis address the reviewability of the claim, while the last two steps involve the merits of the claim." (Internal quotation marks omitted.) *State* v. *Britton*, 283 Conn. 598, 615, 929 A.2d 312 (2007).

The claim is reviewable pursuant to *Golding* because the record is adequate for review and the claim is of constitutional magnitude. See *State* v. *Urbanowski*, 163 Conn. App. 377, 386, 136 A.3d 236 (2016), aff'd, 327 Conn. 169, 172 A.3d 201 (2017). Moreover, the defendant claims that he has received duplicative punishments for the same offense in a single trial. "A defendant may obtain review of a double jeopardy claim, even if it is unpreserved, if he has received two punishments for two crimes, which he claims were one crime, arising from the same transaction and prosecuted at one trial . . . ." (Internal quotation marks omitted.) Id., 386–87. Because the defendant's claim is reviewable, we next address its merits.

We first set forth the applicable standard of review and relevant legal principles that guide our analysis. "A defendant's double jeopardy challenge presents a question of law over which we have plenary review. . . . The double jeopardy clause of the fifth amendment to the United States constitution provides: [N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb. The double jeopardy clause is applicable to the states through the due process clause of the fourteenth amendment. . . . This constitutional guarantee prohibits not only multiple trials for the same offense, but also multiple punishments for the same offense in a single trial. . . .

"Double jeopardy analysis in the context of a single trial is a two-step process. First, the charges must arise out of the same act or transaction. Second, it must be determined whether the charged crimes are the same offense. Multiple punishments are forbidden only if both conditions are met." (Citations omitted; internal quotation marks omitted.) *State* v. *Wright*, 319 Conn. 684, 689, 127 A.3d 147 (2015). If we determine that the charges do not arise from the same transaction, we do not need to proceed to the second step of the analysis. *State* v. *Schovanec*, 326 Conn. 310, 328, 163 A.3d 581 (2017).

"Traditionally we have applied the *Blockburger* test to determine whether two statutes criminalize the same offense, thus placing a defendant prosecuted under both statutes in double jeopardy: [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. . . . This test is a technical one and examines only the statutes, charging instruments, and bill of particulars as opposed to the evidence presented at trial. . . .

"Our analysis of [the defendant's] double jeopardy [claim] does not end, however, with a comparison of the offenses. The *Blockburger* test is a rule of statutory construction, and because it serves as a means of discerning [legislative] purpose the rule should not be controlling where, for example, there is a clear indication of contrary legislative intent. . . . Thus, the *Blockburger* test creates only a rebuttable presumption of legislative intent, [and] the test is not controlling when a contrary intent is manifest. . . . When the conclusion reached under *Blockburger* is that the two crimes do not constitute the same offense, the burden remains on the defendant to demonstrate a clear legislative intent to the contrary." (Citations omitted; internal quotation marks omitted.) *State* v. *Wright*, supra, 689–90.

We begin our analysis by determining whether the conviction for both counts of risk of injury to a child pursuant to § 53-21 (a) (1) and (2) arose from the same act or transaction. "[D]istinct repetitions of a prohibited act, however closely they may follow each other . . . may be punished as separate crimes without offending the double jeopardy clause. . . . The same transaction, in other words, may constitute separate and distinct crimes where it is susceptible of separation into parts, each of which in itself constitutes a completed offense. . . . [T]he test is not whether the criminal intent is one and the same and inspiring the whole transaction, but whether separate acts have been committed with the requisite criminal intent and are such as are made punishable by the [statute]." (Citations omitted; internal quotation marks omitted.) *State* v. *Tweedy*, 219 Conn. 489, 497–98, 594 A.2d 906 (1991). When analyzing whether the conviction arose from the same act or transaction, "it is not uncommon that we look to the evidence at trial and to the state's theory of the case . . . in addition to the information against the defendant, as amplified by the bill of particulars." (Citation omitted; internal quotation marks omitted.) *State* v. *Porter*, 328 Conn. 648, 662, 182 A.3d 625 (2018).

At the onset, we note that the defendant did not obtain a bill of particulars to clarify the charges alleged in the information.[4] As a result, pursuant to our Supreme

Court's recent decision in *Porter*, we look to the information, the evidence adduced at trial, and the state's theory of the case to discern whether the conviction arose from the same act or transaction. Our Supreme Court, when examining those materials, has asked whether a jury reasonably could have found a separate factual basis to support its conviction for the offenses charged. See id., 656–57 (noting that *Schovanec* looked to what a jury reasonably could have found); *State* v. *Schovanec*, supra, 326 Conn. 329; *State* v. *Snook*, 210 Conn. 244, 265, 555 A.2d 390 (1987), cert. denied, 492 U.S. 924, 109 S. Ct. 3258, 106 L. Ed. 2d 603 (1989). We conclude that the defendant's conviction pursuant to both risk of injury to a child charges arose from separate acts and transactions.

The defendant argues that the state intermingled evidence, making it impossible to deduce what evidence the jury relied on to support its conviction for both counts of risk of injury to a child. Specifically, the defendant points to several statements made by the state during closing argument, suggesting that the state misled the jury into considering evidence related to the situational risk of injury to a child charge under § 53-21 (a) (1) when discussing the sexual contact risk of injury charge under § 53-21 (a) (2) and vice versa.[5] We are not persuaded.

In *State* v. *Schovanec*, supra, 326 Conn. 312–17, the defendant was convicted of identity theft in the third degree in violation of General Statutes § 53a-129d, credit card theft in violation of General Statutes § 53a-128c (a), illegal use of a credit card in violation of General Statutes § 53a-128d (2), and larceny in the sixth degree in violation of General Statutes § 53a-125b after he stole the victim's wallet and later utilized her credit cards to purchase gasoline and cigarettes. In support of his argument that his conviction violated his constitutional protection against double jeopardy, the defendant essentially argued that because the trial court had referred to the purchase of gasoline and cigarettes with the stolen credit cards, in addition to the theft of the wallet, when charging the jury on the larceny in the sixth degree charge, all of the defendant's acts were part of the same transaction. Id., 328–29. Our Supreme Court rejected this argument, opining that "because the jury, and not the judge, was the fact finder . . . because the information was broad enough to encompass the theft of the wallet and its contents and the separate unauthorized charges on the credit cards, and because the prosecutor both argued the case and presented evidence in that manner relating to both incidents, we reject the defendant's arguments in that regard." Id., 329.

Similarly, in the present case, we find that the information was broad enough to encompass both risk of injury charges and that the state presented evidence at

trial in a manner that supported the jury's factual findings. Additionally, a review of the record reveals that the defendant's conduct is susceptible to separation into distinct parts, which supports the conviction for both charges of risk of injury to a child. The jury reasonably could have found a separate factual basis, on the basis of the testimony of witnesses and the evidence admitted at trial, to support each conviction of risk of injury to a child.

First, the jury reasonably could have credited the testimony of the victim and the victim's mother that the defendant waited until the victim's mother was in the shower, pulled down the victim's pants, pinned her against the wall, and forced her head toward his exposed penis. These statements would support a conviction of risk of injury to a child under § 53-21 (a) (1). Moreover, the jury reasonably could have credited the victim's statements in her forensic interview that the defendant touched her vagina while also discrediting the defendant's testimony that his contact with the victim's vagina was accidental and was done out of concern that other men were touching her in that area. These statements would support a conviction of risk of injury to a child under § 53-21 (a) (2).

To bolster his claim, the defendant relies on *State* v. *Mezrioui*, 26 Conn. App. 395, 402–403, 602 A.2d 29, cert. denied, 224 Conn. 909, 617 A.2d 169 (1992), for the proposition that where it is unclear what conduct the jury relied on to convict the defendant, we must conclude that the crimes arose out of the same transaction. In *Mezrioui*, the defendant was convicted of sexual assault in the first degree and sexual assault in the third degree after he raped the victim in his car. Id., 396–98. The trial court instructed the jury that the defendant's contact with either the victim's groin or breasts would support a conviction of sexual assault in the third degree. Id., 402–403. Because sexual assault in the first degree entailed incidental contact with the groin, and because it was unclear whether the jury relied on the defendant's contact with the victim's groin or breasts for its conviction of sexual assault in the third degree, this court concluded that the crimes arose out of the same act or transaction. Id., 403.

A key distinction in *Mezrioui*, however, is that this court's analysis looked only to the charging documents. Id., 402. Therefore, it did not consider the evidence presented at trial and the state's theory of the case to discern what the jury reasonably could have found to support the conviction at issue. Id. Consequently, we are unpersuaded by the defendant's reliance on *Mezrioui* because it does not reflect our more recent double jeopardy jurisprudence that looks to the evidence presented at trial as well as the state's theory of the case under the first part of the double jeopardy analysis.

In conclusion, the defendant's conviction did not

arise from the same acts or transactions. Because the defendant has failed to satisfy the first part of our double jeopardy inquiry, we decline to move to the second step of the analysis. Accordingly, we find that the defendant's constitutional protection against double jeopardy was not violated.

## II

The defendant next claims that he was deprived of a fair trial due to prosecutorial impropriety during the course of closing and rebuttal arguments. Specifically, he argues that the prosecutor (1) misstated the law and (2) gave her personal opinion as to the credibility of a witness. We disagree.

We begin by setting forth the relevant law that guides our analysis. Although the defendant did not object to the prosecutor's remarks at trial, his claim is nonetheless reviewable because "a defendant who fails to preserve claims of prosecutorial [impropriety] need not seek to prevail under the specific requirements of [*Golding*], and, similarly, it is unnecessary for a reviewing court to apply the four-pronged *Golding* test." (Internal quotation marks omitted.) *State* v. *Papantoniou*, 185 Conn. App. 93, 110, 196 A.3d 839 (2018).

"[O]ur Supreme Court has explained that a defendant's failure to object at trial to each of the occurrences that he now raises as instances of prosecutorial impropriety, though relevant to our inquiry, is not fatal to review of his claims. . . . This does not mean, however, that the absence of an objection at trial does not play a significant role in the determination of whether the challenged statements were, in fact, improper. . . . To the contrary, we continue to adhere to the well established maxim that defense counsel's failure to object to the prosecutor's argument when it was made suggests that defense counsel did not believe that it was [improper] in light of the record of the case at the time." (Internal quotation marks omitted.) *State* v. *Roberts*, 158 Conn. App. 144, 151, 118 A.3d 631 (2015).

"In analyzing claims of prosecutorial impropriety, we engage in a two step analytical process. . . . The two steps are separate and distinct. . . . We first examine whether prosecutorial impropriety occurred. . . . Second, if an impropriety exists, we then examine whether it deprived the defendant of his due process right to a fair trial. . . . The two steps of [our] analysis are separate and distinct, and we may reject the claim if we conclude that the defendant has failed to establish either prong." (Citations omitted; internal quotation marks omitted.) *State* v. *Papantoniou*, supra, 185 Conn. App. 110–11. A reviewing court need not conduct the first step of the analysis if it determines that, even if the prosecutor's conduct was improper, it did not deprive the defendant of a fair trial. *State* v. *Hickey*, 135 Conn. App. 532, 554, 43 A.3d 701, cert. denied, 306

Conn. 901, 52 A.3d 728 (2012).

"[P]rosecutorial [impropriety] of a constitutional magnitude can occur in the course of closing arguments. . . . When making closing arguments to the jury, [however] [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. . . . Thus, as the state's advocate, a prosecutor may argue the state's case forcefully, [provided the argument is] fair and based upon the facts in evidence and the reasonable inferences to be drawn therefrom." *State* v. *Reddick*, 174 Conn. App. 536, 559, 166 A.3d 754, cert. denied, 327 Conn. 921, 171 A.3d 58 (2017), and cert. denied, U.S.    , 138 S. Ct. 1027, 200 L. Ed. 2d 285 (2018). "[W]hen reviewing the propriety of a prosecutor's statements, we do not scrutinize each individual comment in a vacuum but, rather, review the comments complained of in the context of the entire trial." (Internal quotation marks omitted.) *State* v. *Holmes*, 169 Conn. App. 1, 11, 148 A.3d 581, cert. denied, 323 Conn. 951, 151 A.3d 847 (2016). We address each of the defendant's claims of prosecutorial impropriety in turn.

A

The defendant first argues that the prosecutor misstated the law by urging the jury to consider evidence related to the risk of injury charge under § 53-21 (a) (1) when discussing the § 53-21 (a) (2) charge.

Specifically, during closing argument, the prosecutor stated: "[The victim] said . . . that [the defendant] exposed his penis and was pulling her head towards him and telling her to, suck it, and she turned her head away and was screaming. . . . And does being exposed to sexual contact by her father in that manner and being asked to suck his penis, is that gonna affect her health and morals . . . ."

"It is well settled that [c]ounsel may comment upon facts properly in evidence and upon reasonable inferences to be drawn from them." (Internal quotation marks omitted.) *State* v. *Chankar*, 173 Conn. App. 227, 250, 162 A.3d 756, cert. denied, 326 Conn. 914, 173 A.3d 390 (2017). "Furthermore, prosecutors are not permitted to misstate the law." (Internal quotation marks omitted.) *State* v. *Walton*, 175 Conn. App. 642, 648, 168 A.3d 652, cert. denied, 327 Conn. 970, 173 A.3d 390 (2017).

After reviewing the record, we are unpersuaded that the prosecutor's remarks were improper. During closing argument, the state highlighted the difference between the two risk of injury to a child charges, stating, in relevant part: "This third count is risk of injury under what we say a sexual contact risk of injury. There's two counts of risk of injury and they're—and *they're very different.*

"The first one has to do with sexual contact, and that's when a person has sexual contact—when a person has contact with the intimate parts of a child under the age of sixteen, in a sexual and indecent manner *likely to impair the health or morals* of such child. . . .

"Risk of injury, the second count, is what we call a situational risk. Situational risk is did this situation affect the child. Specifically . . . it's when a person places a child under the age of sixteen in a situation that the morals of said child were likely to be impaired. *It's a very different thing than the sexual contact, risk of injury in count three*. It's a situation." (Emphasis added.)

When considering these additional statements, it is apparent that the state attempted to delineate the two separate risk of injury charges and did not misstate the law. Rather, the prosecutor correctly stated that the sexual contact itself must impair the health or morals of a child to support a conviction under § 53-21 (a) (2). Although the state may have mentioned evidence pertaining to the § 53-21 (a) (1) charge when discussing the § 53-21 (a) (2) charge, the defendant has failed to cite to any authority which suggests that the state is required at closing argument to neatly arrange evidence introduced at trial according to what charge it supports. To the contrary, our case law makes clear that closing argument is not a precise exercise. Moreover, the defendant failed to object to the prosecutor's statement, suggesting that the defendant did not view the remarks as improper at the time they were made. As a result, we conclude that the prosecutor's statement was not improper.

B

The defendant next argues that the prosecutor improperly disclosed her own opinion regarding the credibility of a witness to the jury during rebuttal closing argument. Specifically, the prosecutor said, "[o]ne thing makes this, *in my opinion*, and *only my opinion* because you are the judges of the facts . . . [t]hat of a sexual nature rather than an innocent nature. Specifically in—in a context of [the victim's sister], she was asleep and that sexual contact started." (Emphasis added.)

"The prosecutor may not express his opinion, directly or indirectly, as to the credibility of the witnesses. . . . Nor should a prosecutor express his opinion, directly or indirectly, as to the guilt of the defendant. . . . Such expressions of personal opinion are a form of unsworn and unchecked testimony, and are particularly difficult for the jury to ignore because of the prosecutor's special position." (Internal quotation marks omitted.) *State* v. *Warholic*, 278 Conn. 354, 363, 897 A.2d 569 (2006).

"Although there are restrictions on a prosecutor's ability to express a personal opinion during closing

argument, [i]t is not improper for the prosecutor to comment upon the evidence presented at trial and to argue the inferences that the jurors might draw therefrom. . . . We must give the jury the credit of being able to differentiate between argument on the evidence and attempts to persuade them to draw inferences in the state's favor, on one hand, and improper unsworn testimony, with the suggestion of secret knowledge, on the other hand." (Internal quotation marks omitted.) *State* v. *Chankar*, supra, 173 Conn. App. 251.

Our review of the record leads us to conclude that the prosecutor's remark was not improper.[6] The prosecutor was commenting on evidence presented at trial that the victim's sister was touched inappropriately by the defendant while sleeping. In light of this evidence, the prosecutor urged the jury to infer that the defendant's touching of the victim was not accidental as he suggested, but sexual in nature. The prosecutor's use of the phrase "in my opinion" in this context does not raise the concern of improper unsworn testimony or secret knowledge reaching the ears of the jury. Rather, these comments were an invitation for the jury to draw commonsense inferences on the basis of evidence presented at trial. We also note that the defendant did not object to this statement either, once again creating a suggestion that the defendant did not view the remarks as improper at the time they were made. Accordingly, we conclude that the prosecutor's remarks were not improper.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[1] See *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[2] General Statutes § 53-21 (a) provides in relevant part: "Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child . . . shall be guilty of . . . a class C felony . . . ."

[3] General Statutes § 53-21 (a) provides in relevant part: "Any person who . . . (2) has contact with the intimate parts, as defined in [General Statutes §] 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . shall be guilty of . . . a class B felony . . . ."

[4] "We acknowledge that the defendant's failure to pursue a motion for a bill of particulars complicates this inquiry." *State* v. *Flynn*, 14 Conn. App. 10, 17, 539 A.2d 1005, cert. denied, 488 U.S. 891, 109 S. Ct. 226, 102 L. Ed. 2d 217 (1988); see also *State* v. *Schovanec*, supra, 326 Conn. 328 n.7 (defendant's failure to request bill of particulars and failure to raise double jeopardy claim before trial court "contributed to the ambiguity that is now present in the record").

[5] When discussing the situational risk charge under § 53-21 (a) (1), the state argued that "[the victim] was trapped up against the wall, that her body [was] being *touched inappropriately* by her father and having to try and have her suck his penis. That's—of all those factors and some other

ones like [it], being six years old, and it being late at night, and being in this room, and not having anybody to help and having to scream out to your mother . . . all of those things go into this situation . . . ." (Emphasis added.) In essence, the defendant argues that the jury could have been misled to consider the inappropriate touching in convicting him under § 53-21 (a) (1).

Similarly, the defendant notes that during rebuttal closing argument, the state asserted: "[F]irst of all I think I could have a hundred jurors sit here and—and describe the penetration into a child's vagina with the fingers by a father, that's—is that indecent, is that sexual. But then you add on top of that this asking [her] to suck the penis—his penis, and she consistently said that." The defendant argues that this statement could have led the jury to consider the defendant asking the victim to suck his penis when deliberating the element of § 53-21 (a) (2) that requires an inappropriate *touching* to be sexual in nature.

Finally, the defendant broadly asserts that the state comingled evidence during closing argument when it urged the jury to consider corroborating evidence.

[6] We acknowledge, and the state concedes, that it nonetheless is preferable that a prosecutor refrain from the use of the phrase "in my opinion." See *State* v. *Gibson*, 302 Conn. 653, 660, 31 A.3d 346 (2011) (acknowledging that prosecutors should avoid phrases beginning with pronoun "I").

———————————————