******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* CALVIN BENNETT
## (AC 40443)

DiPentima, C. J., and Elgo and Harper, Js.

*Syllabus*

The defendant, who had been convicted by a three judge panel of the crimes of felony murder, home invasion and burglary in the first degree in connection with the shooting death of the victim, appealed to this court from the trial court's denial of his motion to correct an illegal sentence. On appeal, the defendant claimed that his sentence for both burglary in the first degree and home invasion violated his constitutional protection against double jeopardy because the home invasion was part of the same transaction as the burglary and his intent throughout the transaction was to carry out a larceny. *Held* that the defendant's conviction of burglary in the first degree and home invasion did not violate his constitutional protection against double jeopardy; although the defendant claimed that the robbery that gave rise to the home invasion was incidental to the completion of the larceny that gave rise to the burglary charge and, therefore, could be considered as part of an uninterrupted course of conduct in furtherance of the burglary, the acts were susceptible to separation into parts that supported a conviction of both burglary in the first degree and home invasion, as the burglary charge arose from the defendant's distinct and separate act of entering the victim's dwelling at night with the intent to commit a larceny, while the home invasion charge arose from the defendant's separate act of threatening the use of physical force against the victim's girlfriend after the defendant and an associate entered the home and were committing the larceny, and although the defendant's conduct constituted one transaction and the defendant may have had the intent to commit a larceny throughout the transaction, the defendant's intent was not a factor in determining whether the transaction was susceptible to separation into parts that supported a conviction of both crimes.

Argued October 25, 2018—officially released February 19, 2019

*Procedural History*

Substitute information charging the defendant with the crimes of aiding and abetting murder, felony murder, home invasion and burglary in the first degree, brought to the Superior Court in the judicial district of Waterbury and tried to a three judge court, *Cremins*, *Crawford* and *Schuman*, *Js.*; judgment of guilty, from which the defendant appealed to our Supreme Court, which reversed the judgment in part and remanded the case for further proceedings; thereafter, the court, *Fasano*, *J.*, denied the defendant's motion to correct an illegal sentence, and the defendant appealed to this court. *Affirmed.*

*W. Theodore Koch III*, assigned counsel, for the appellant (defendant).

*Linda Currie-Zeffiro*, assistant state's attorney, with whom, on the brief, were *Maureen Platt*, state's attorney, and *John Davenport*, senior assistant state's attorney, for the appellee (state).

*Opinion*

HARPER, J. The defendant, Calvin Bennett, appeals from the judgment of the trial court denying his motion to correct an illegal sentence. On appeal, the defendant argues that the court improperly rejected his claim that his sentence for both burglary in the first degree in violation of General Statutes § 53a-101 (a) (3)[1] and home invasion in violation of General Statutes § 53a-100aa (a) (1)[2] violates his constitutional protection against double jeopardy. We affirm the judgment of the trial court.

Our Supreme Court, in its opinion addressing the defendant's direct appeal, recited the following procedural history and facts relevant to this appeal. "The defendant . . . was charged with aiding and abetting murder in violation of General Statutes §§ 53a-8 and 53a-54a, felony murder in violation of General Statutes § 53a-54c, home invasion in violation of General Statutes § 53a-100aa (a) (1), and burglary in the first degree in violation of General Statutes § 53a-101 (a) (3). The defendant elected a trial to a three judge court (panel). See General Statutes § 54-82. The panel, consisting of *Cremins*, *Crawford* and *Schuman, Js.*, rendered a unanimous verdict of guilty on all of the charges except aiding and abetting murder, on which a majority of the panel found the defendant guilty, and thereafter rendered judgment in accordance with the verdict and imposed a total effective sentence of sixty years imprisonment. . . .

"[The victim] James Caffrey lived in the second floor apartment of 323 Hill Street in Waterbury with his girlfriend Samantha Bright and one other roommate. James' mother, Emilia Caffrey, lived in the first floor apartment. In the late afternoon of Saturday, October 26, 2008 . . . Caffrey and Bright had five visitors, including Tamarius Maner, in their living room. Maner had a clear view of the bedroom from where he was seated in the living room. Maner purchased a small amount of marijuana from . . . Caffrey and paid him some money, which Caffrey put in the bedroom. Caffrey kept the marijuana in the bedroom. Caffrey remarked that he had saved $500 for a child that he was expecting with Bright.

"At about that time, Maner and the defendant lived next door to each in other in Bridgeport and had done drug business together. Maner contacted the defendant by cell phone during the evening of Saturday, October 26. Shortly after midnight on Sunday, October 27, Maner and the defendant drove from Bridgeport to Waterbury to go to James Caffrey's apartment. They were carrying loaded handguns.

"Just after 1 a.m., the doorbell to the second floor apartment at 323 Hill Street rang and Caffrey answered the door. A conversation of a few seconds with . . . Caffrey ensued. Maner then shot Caffrey in the face

from a distance of one to three feet with a .45 caliber handgun. Caffrey fell in the hallway in a pool of blood and died from the gunshot wound to the head.

"Maner and the defendant walked past Caffrey and into the bedroom. Then the defendant put a gun to Bright's head and asked: 'Where is everything?' Bright understood the question to inquire about money and drugs. Bright referred them to the top dresser drawer. Maner opened it and threw its contents on the bedroom floor.

"At about that time, they heard the screams of Emilia Caffrey, who had heard the shot and discovered her son lying in the second floor hallway. The defendant told Bright to keep her head down and face the wall. Maner and the defendant then ran into the kitchen, which Emilia Caffrey had also entered to call 911. Maner, who was standing at the stove, fired one shot at [Emilia] Caffrey and missed. The defendant was standing at the window.

"Maner and the defendant then ran out of the kitchen, pushing [Emilia] Caffrey to the floor as they left. They returned to their car and arrived back in Bridgeport around 2 a.m.

"Police interviews of some of the Waterbury visitors to James Caffrey's apartment on the afternoon of October 26 led to the identity of Maner, who was also known in Bridgeport as T or Trigger. Further police investigation, including analysis of Maner's cell phone calls, brought police to an apartment in Bridgeport where they found the defendant. The defendant voluntarily returned to Waterbury with the police and told them that he had not left Bridgeport on the night in question. When confronted with the fact that his cell phone records showed him in Waterbury during the time of the crimes, the defendant put his head down for a minute and then indicated that he had nothing more to say. A search, pursuant to a warrant, of his apartment in Bridgeport revealed a suitcase containing the defendant's clothes, a loaded .45 caliber pistol, and a sock containing sixty-one rounds of ammunition." (Internal quotation marks omitted.) *State* v. *Bennett*, 307 Conn. 758, 760–63, 59 A.3d 221 (2013). Our Supreme Court vacated the defendant's conviction of aiding and abetting murder and affirmed the judgment in all other aspects. Id., 777.

On November 16, 2015, the defendant filed a pro se motion to correct an illegal sentence pursuant to Practice Book § 43-22,[3] arguing that his sentence for both burglary in the first degree and home invasion violates his constitutional protection against double jeopardy. The defendant subsequently was appointed counsel, who filed a memorandum of law in support of the defendant's motion. After a hearing, the trial court orally denied the motion. This appeal followed.

We begin by setting forth the standard of review and relevant law. "Ordinarily, a claim that the trial court improperly denied a defendant's motion to correct an illegal sentence is reviewed pursuant to the abuse of discretion standard. . . . A double jeopardy claim, however, presents a question of law, over which our review is plenary." (Citations omitted; internal quotation marks omitted.) *State* v. *Baker*, 168 Conn. App. 19, 24, 145 A.3d 955, cert. denied, 323 Conn. 932, 150 A.3d 232 (2016).

"The double jeopardy clause of the fifth amendment to the United States constitution provides: [N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb. The double jeopardy clause is applicable to the states through the due process clause of the fourteenth amendment. . . . This constitutional guarantee prohibits not only multiple trials for the same offense, but also multiple punishments for the same offense in a single trial. . . .

"Double jeopardy analysis in the context of a single trial is a two-step process. First, the charges must arise out of the same act or transaction. Second, it must be determined whether the charged crimes are the same offense. Multiple punishments are forbidden only if both conditions are met." (Internal quotation marks omitted.) *State* v. *Schovanec*, 326 Conn. 310, 325, 163 A.3d 581 (2017). If we determine that the charges do not arise from the same act or transaction, we do not need to proceed to the second step of the analysis. Id., 328.

"At step one, it is not uncommon that we look to the evidence at trial and to the state's theory of the case . . . in addition to the information against the defendant, as amplified by the bill of particulars. . . . If it is determined that the charges arise out of the same act or transaction, then the court proceeds to step two, where it must be determined whether the charged crimes are the same offense. . . . At this second step, we [t]raditionally . . . have applied the *Blockburger* test to determine whether two statutes criminalize the same offense, thus placing a defendant prosecuted under both statutes in double jeopardy: [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. . . . In applying the *Blockburger* test, we look only to the information and bill of particulars—as opposed to the evidence presented at trial—to determine what constitutes a lesser included offense of the offense charged." (Citations omitted; internal quotation marks omitted.) *State* v. *Porter*, 328 Conn. 648, 662, 182 A.3d 625 (2018). This test is "a technical one and examines only the statutes, charging instruments, and bill of particulars as opposed to the evidence

presented at trial." Id., 656.

In the present case, we begin our analysis by determining whether the conviction for burglary in the first degree and home invasion arose from the same act or transaction.[4] "The same transaction . . . may constitute separate and distinct crimes where it is susceptible of separation into parts, each of which constitutes a completed offense. . . . [T]he test is not whether the *criminal intent* is one and the same and inspiring the whole transaction, but whether *separate acts* have been committed with the requisite criminal intent and are such as are made punishable by the [statute]." (Emphasis added; internal quotation marks omitted.) *State* v. *Tweedy*, 219 Conn. 489, 497–98, 594 A.2d 906 (1991). When determining whether two charges arose from the same act or transaction, our Supreme Court has asked whether a jury reasonably could have found separate factual basis for each offense charged. *State* v. *Schovanec*, supra, 326 Conn. 329; see also *State* v. *Snook*, 210 Conn. 244, 265, 555 A.2d 390, cert. denied, 492 U.S. 924, 109 S. Ct. 3258, 106 L. Ed. 2d 603 (1989). Logically, it follows that we must ask whether the three judge panel reasonably could have found separate factual bases for the burglary and home invasion charges.

The defendant argues that the home invasion was part of the same transaction as the burglary and that his intent throughout the transaction was to carry out a larceny. We agree that the commission of the burglary did not cease until the defendant left the dwelling. See *White* v. *Commissioner of Correction*, 170 Conn. App. 415, 434, 154 A.3d 1054 (2017) (burglary, once commenced, continues until all participants in burglary have left the premises). Nevertheless, although the defendant's conduct constituted one transaction and the defendant may have had the intent to commit a larceny throughout the transaction, the relevant inquiry does not focus on the defendant's intent. Rather, we must determine whether the transaction is susceptible to separation into parts that support a conviction of both burglary in the first degree and home invasion. We conclude that the acts are susceptible to separation into parts.

The information alleges that the defendant committed burglary in the first degree when he "entered and remained unlawfully in a dwelling at night with the intent to commit a crime therein, namely *a larceny*." (Emphasis added.) The information further alleges that the defendant committed home invasion when he "entered and remained unlawfully in a dwelling, while a person other than the participant in the crime [was] actually present in such dwelling, with the intent to commit a crime therein, here, a larceny, and, in the course of committing the offense, acting with one or more persons, such person or another participant in

the crime commit[ted] . . . a felony, here, *a robbery* against the person of Samantha Bright, who was not a participant in the crime who was actually present in such dwelling." (Emphasis added.)

As the charges are presented in the information, the panel could have reasonably found a factual basis to support the burglary charge when the defendant unlawfully entered Caffrey's home at night with the intent of committing a larceny by stealing Caffrey's drugs and money. Additionally, the panel reasonably could have found a factual basis to support the home invasion charge when, subsequent to the unlawful entry, the defendant pointed a gun at Bright's head while asking "where is everything?" The threatened use of physical force during the commission of the larceny gave rise to the felonious act of robbery and, therefore, completed the offense of home invasion.[5] In other words, the burglary charge arose from the distinct and separate act of *entering* the dwelling at night with the intent to commit a larceny, while the home invasion charge arose from the separate act of *threatening the use of physical force* against Bright after the defendant and Maner entered the home and were committing the larceny. See *State* v. *Meadows*, 185 Conn. App. 287, 295, 197 A.3d 464 (transaction giving rise to conviction of prohibited contact with victim and threatening and harassing victim in violation of standing criminal protective order constituted separate acts because conduct described in long form information was susceptible to separation into parts despite close proximity of acts), cert. granted, 330 Conn. 947, 196 A.3d 327 (2018); *State* v. *James E.*, 154 Conn. App. 795, 833-834, 112 A.3d 791 (2015) (two counts of assault of elderly person considered separate acts or transactions because conduct described in information was susceptible to separation into parts despite victim being shot twice in short period of time), aff'd, 327 Conn. 212, 173 A.3d 380 (2017).

In an attempt to support his argument, the defendant cites to *White* v. *Commissioner of Correction*, supra, 170 Conn. App. 433–34, seemingly for the proposition that when a burglary is in progress, actions taken after entry into a home may be considered as part of an uninterrupted course of conduct in furtherance of the burglary.[6] The relevant portion of our decision in *White* did not address a double jeopardy argument, but rather addressed, following our Supreme Court's decision in *State* v. *Salamon*, 287 Conn. 509, 949 A.2d 1092 (2008), whether a defendant's conduct that gave rise to a kidnapping conviction was incidental to the commission of a burglary.[7] Id., 433. We disagree, therefore, with the defendant's analogy.

Framed differently, the defendant essentially argues that the home invasion, specifically the robbery that gave rise to the home invasion, was incidental to the completion of the larceny that gave rise to the burglary

charge. Our court rejected a similar claim in *State* v. *Gemmell*, 151 Conn. App. 590, 603–604, 94 A.3d 1253, cert. denied, 314 Conn. 915, 100 A.3d 405 (2014), in which the defendant argued that, according to *Salamon*, his conviction of home invasion was incidental to the charges of violation of a protective order or unlawful restraint. In rejecting the defendant's claim, the court noted that *Salamon* was applicable only to the state's kidnapping statutes, and not to other crimes. Id. We similarly reject the defendant's claim in the present case.

In conclusion, the burglary in the first degree and home invasion charges arose from a transaction that was susceptible to separation into parts. Accordingly, the defendant's conviction of both offenses did not violate his constitutional protection against double jeopardy. Because we conclude that the charges arose from separate acts, we need not move to the second step of our double jeopardy analysis.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 53a-101 (a) provides in relevant part: "A person is guilty of burglary in the first degree when . . . (3) such person enters or remains unlawfully in a dwelling at night with intent to commit a crime therein."

[2] General Statutes § 53a-100aa (a) provides in relevant part: "A person is guilty of home invasion when such person enters or remains unlawfully in a dwelling, while a person other than a participant in the crime is actually present in such dwelling, with intent to commit a crime therein, and, in the course of committing the offense: (1) Acting either alone or with one or more persons, such person or another participant in the crime commits or attempts to commit a felony against the person of another person other than a participant in the crime who is actually present in such dwelling . . . ."

[3] Practice Book § 43-22 provides that "[t]he judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner."

[4] We note that the defendant did not seek a bill of particulars to aid in our analysis.

[5] Robbery is defined in General Statutes § 53a-133, which provides in relevant part: "A person commits robbery when, in the *course of committing a larceny* he uses or threatens the immediate use of physical force upon another person for the purpose of . . . compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny." (Emphasis added.)

[6] The defendant argues in his reply brief that one of the state's arguments in the present case is analogous to one of its arguments in *White*, in which it argued that the commission of the burglary was completed upon entry into the home and, therefore, any actions subsequent to the burglary were not incidental to the burglary. Although the state's brief in the present case does state that the burglary was completed upon entry into the dwelling, the state also acknowledged that the burglary continued as long as the defendant and Maner remained in the dwelling. By use of the word "completed," the state appears to mean that liability for burglary attached upon entry into the dwelling.

[7] In *Salamon*, our Supreme Court reexamined this state's kidnapping statutes in holding that a defendant could not be convicted of kidnapping if restraint of a victim was merely incidental in the commission of a separate offense. See *State* v. *Salamon*, supra, 287 Conn. 509.